IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES HARRINGTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:16-cv-48-RJD |
| JOHN SONES and JACY FULK, | ) ) ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff James Harrington, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Vandalia Correctional Center ("Vandalia"). Plaintiff alleges he was denied adequate treatment for his serious dental condition. Plaintiff is proceeding against Dr. John Sones and Nurse Jacy Fulk for deliberate indifference.

Dr. Sones and Nurse Fulk filed motions for summary judgment that are now before the Court (Docs. 58 and 74). Harrington timely responded to Defendants' motions (Docs. 65 and 80). For the reasons set forth below, Defendants' Motions are **GRANTED**.

**Background**

In November 2013, while incarcerated at Vandalia Correctional Center ("Vandalia"), Plaintiff James Harrington experienced stiffness in the left side of his body and was escorted to the healthcare unit on an emergency basis (Deposition of James Harrington, Doc. 59-3, p. 5). Harrington contends Nurse Jacy Fulk came into the exam room and, after he explained that the left side of his body was stiff and he could not move his neck or jaw, she told him, "It's not a

life-or-death situation" and directed him to go back to his dorm and fill out a request form (*Id.* at 9). Nurse Fulk did not perform an examination and did not refer Harrington to be seen by a doctor (*Id.* at 9, 44). It is not clear what day this interaction occurred, but Harrington believes it was within one week before seeing the dentist, Dr. Sones, which occurred on November 29, 2013 (*Id.* at 16, 44). Harrington did not fill out a medical request form, explaining that he purchased pain medication from the commissary a few hours after seeing Nurse Fulk, which resolved his pain (*Id.* at 10).

On November 29, 2013, the left side of Harrington's face was swollen and he was again taken to the healthcare unit for evaluation, where he was seen by Defendant Dr. Sones (Doc. 59-3 at 10-11, 44; *see* James Harrington's Medical Records, Doc. 59-1, p. 1, 5). Harrington complained that his "face swelled up bad" the previous afternoon, and Dr. Sones observed severe swelling from the edge of Harrington's upper lip over the cheekbone to the back of the arch of tooth #16 (top left wisdom tooth) (Deposition of Dr. Jonathan Sones, Doc. 59-2 at 15; *see* Doc. 59-1 at 1, 5). After examining Harrington's mouth and reviewing his panoramic x-rays, Dr. Sones determined Harrington suffered from severe swelling, severe periodontal disease, and severe decay throughout the four quadrants of his mouth (Doc. 59-2 at 15). Dr. Sones also found that teeth #s 4, 14, and 21 were actively infected (*Id.* at 15-16). Based on this assessment, Dr. Sones determined that all of Harrington's remaining teeth needed to be extracted as they were not viable or salvageable (*Id.* at 17-18; *see* Doc. 59-1 at 1, 5). Harrington, however, contends that Dr. Sones did not tell him that all of his teeth needed to be extracted on this date (Doc. 59-3 at 27). It is undisputed that Dr. Sones ordered the administration of Unasyn (an IV antibiotic), Pen VK (an oral antibiotic), and Motrin (a Nonsteroidal Anti-inflammatory) (Doc. 59-2 at 15; Doc. 59-3 at 26; *see* Doc. 59-1 at 1, 5). The antibiotics were prescribed to treat the infection, prior to extraction,

and Motrin was prescribed to address any discomfort or pain (Doc. 59-2 at 15; *see* Doc. 59-1 at 1, 5). An immediate extraction was not scheduled due to the severity of Harrington's infection and swelling (Doc. 59-2 at 17).

After receiving antibiotics, Harrington saw Dr. Sones for his extraction on December 2, 2013 (Doc. 59-3 at 27; Doc. 59-2 at 17; *see* Doc. 59-1 at 5). It is undisputed that Dr. Sones extracted teeth #s 4, 14, and 21 (*Id.*). Harrington contends that after these teeth were extracted, Dr. Sones told him, for the first time, that the rest of his teeth also needed to be extracted (Doc. 59-3 at 28). Harrington refused (*Id.*; *see* Doc. 59-1 at 14). After this extraction, Harrington's partial denture no longer fit in his mouth, but Dr. Sones would not provide a new partial denture (Doc. 59-3 at 46).

Harrington saw Dr. Sones again on June 19, 2014 and October 21, 2014 (Doc. 59-3 at 32; *see* Doc. 59-1 at 7). During these appointments, Harrington requested a new partial denture and indicated he had difficulty eating, but Dr. Sones refused, offering only his initial recommendation of extracting the remainder of Harrington's teeth, letting the extractions heal, and then fitting him for a complete set of dentures (Doc. 59-3 at 33-35). It does not appear that Dr. Sones saw Harrington after October 21, 2014.

On October 31, 2014, Harrington was seen by another dentist, Dr. Sandhu, who noted that he had very poor oral hygiene and was leaving his partial denture in "24/7," which was causing inflammation of the upper gingival tissues and palate (Doc. 59-2 at 37; *see* Doc. 59-1 at 8-9). Dr. Sandhu's examination was limited to Harrington's upper arch, and he recommended a full upper extraction and a full upper denture (*Id.*). However, Dr. Sandhu noted that he would add teeth to Harrington's upper partial denture, but this could not be done until his oral hygiene improved (Doc. 59-2 at 38; *see* Doc. 59-1 at 9). On November 10, 2014, Dr. Sandhu noted that

Harrington's oral hygiene had improved and he explained to Harrington that he would add teeth to his upper denture; however, Harrington declined, due to Dr. Sandhu's concern that the denture may not fit when it came back from the factory (Doc. 59-3 at 48; Doc. 59-2 at 38; *see* Doc. 59-1 at 9, 11).

**Discussion**

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). The Seventh Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle*

*Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Eighth Amendment Deliberate Indifference*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough.

*Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

**Defendant Dr. John Sones**

Dr. Sones does not argue that Harrington's dental condition fails to meet the objective requirement of a "serious medical need." Accordingly, the Court finds this point has been conceded and will only consider whether Dr. Sones acted with deliberate indifference.

It is well settled in this Circuit that the Eighth Amendment does not demand "specific care" or the "best care possible"; rather, it requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Indeed, the Seventh Circuit recognizes that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)).

Here, even when the evidence is credited in Harrington's favor, it is apparent that Dr. Sones exercised his medical judgment to treat Harrington's dental condition. Dr. Sones evaluated

Harrington prior to performing any extraction and determined that all of Harrington's remaining teeth needed to be removed. Dr. Sones explained, and Harrington has failed to refute, that because Harrington's remaining teeth were severely mobile, there was insufficient support for a partial denture (Doc. 59-2 at 33-34). Indeed, Dr. Sones testified that if a partial denture was attached to Harrington's mobile teeth, it could pull the existing teeth out (*Id.* at 34). He further explained that a partial denture could prevent exudate (a mass of cells and fluid that has seeped out of blood vessels or an organ, especially in inflammation) from exfoliating out of the sulcus (the ligament around the tooth where the tooth sets in the bone), potentially causing a dental abscess that could require IV antibiotics or hospitalization, or result in death (*Id.*). Although Harrington disagreed with Dr. Sones' recommended course of treatment, he is entitled only to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes*, 112 F.3d at 267. While the Court acknowledges Dr. Sones failed to adjust his treatment recommendations despite being informed that Harrington was having difficulty eating and using his old partial denture, such circumstance does not affect its ruling. Dr. Sones attempted to alleviate these issues with his treatment recommendations, but Harrington simply disagreed with — and refused — his recommended course of treatment.

For these reasons, Dr. Sones is entitled to judgment as a matter of law.

**Defendant Jacy Fulk**

Defendant Fulk contends she is entitled to summary judgment as: (1) Harrington has failed to demonstrate that she was working on the dates at issue in this lawsuit; (2) the symptoms Harrington allegedly complained of do not constitute a serious medical condition; (3) the First Amended Complaint was not filed within the prescribed statutory time period; and (4) she is entitled to qualified immunity.

The Court first considers Fulk's statute of limitations argument. Although §1983 does not contain an express statute of limitations, it is well established in this Circuit that the limitations and tolling laws in the state where the alleged injury occurred are applied. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Illinois law prescribes that actions for personal injury must be commenced within two years after the cause of action accrued; thus, this case is governed by a two-year statute of limitations period. 735 ILCS § 5/13-202; *see Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citations omitted). Further, pursuant to 735 ILCS 5/13-216, "[w]hen the commencement of an action is stayed by … *statutory prohibition*, the time of the continuance of the … prohibition is not part of the time limited for the commencement of the action" (emphasis added). Because the Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies prior to filing suit under § 1983, the Seventh Circuit Court of Appeals has held that a federal court relying on the Illinois statute of limitations in §1983 cases *must* toll the limitations period while a prisoner completes the administrative grievance process. *See* 42 U.S.C. § 1997(e)(a); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).

Defendant Fulk asserts that Harrington's claim is untimely and must be dismissed as his First Amended Complaint was filed more than two-years after his cause of action accrued. The Court agrees. Harrington's cause of action against Fulk accrued, at the latest, on November 29, 2013[1]. Harrington filed a grievance concerning her treatment on December 3, 2013 (*see* Doc. 75-5 at 41-42). Harrington received his counselor, grievance officer, and warden's response, and then submitted his grievance to the Administrative Review Board ("ARB") (*see id.* at 38-41). The ARB responded on July 3, 2014, and the Director of the IDOC concurred on July 29, 2014

---

[1] Harrington argues that the continuing violation doctrine should apply to his claim against Defendant Fulk. As Harrington's claim against Fulk is not premised on her failure to provide adequate dental care after November 29, 2013, the continuing violation doctrine is not applicable.

Page **8** of **10**

(*see id.* at 38). Vandalia received the ARB and Director's denial letter on August 11, 2014 (*see* Doc. 80-6). Thus, when considering the necessary tolling of the limitations period for completion of the administrative grievance process, the statutory period expired, at the latest, on August 12, 2016. Harrington did not file his First Amended Complaint naming Jacy Fulk as a defendant until December 16, 2016 (*see* Doc. 31). Indeed, Harrington never sought leave to name Fulk as a defendant until October 3, 2016, *after* the statutory limitations period expired (*see* Doc. 27).

Harrington contends that his Fist Amended Complaint relates back to his original complaint, which was timely filed, under Federal Rule of Civil Procedure 15(c). In relevant part, Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading, or changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Although it appears Harrington's claim against Fulk arose out of the "conduct, transaction, or occurrence" attempted to be set out in his original pleading, there is no indication that Fulk "knew or should have known" that this action would have been brought against her and any such knowledge should not be imputed to her.

Finally, the Court considers Harrington's argument that the doctrine of equitable tolling should save his claim. Equitable tolling permits a plaintiff to avoid the bar of the statute of

(*see id.* at 38). Vandalia received the ARB and Director's denial letter on August 11, 2014 (*see* Doc. 80-6). Thus, when considering the necessary tolling of the limitations period for completion of the administrative grievance process, the statutory period expired, at the latest, on August 12, 2016. Harrington did not file his First Amended Complaint naming Jacy Fulk as a defendant until December 16, 2016 (*see* Doc. 31). Indeed, Harrington never sought leave to name Fulk as a defendant until October 3, 2016, *after* the statutory limitations period expired (*see* Doc. 27).

Harrington contends that his Fist Amended Complaint relates back to his original complaint, which was timely filed, under Federal Rule of Civil Procedure 15(c). In relevant part, Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading, or changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Although it appears Harrington's claim against Fulk arose out of the "conduct, transaction, or occurrence" attempted to be set out in his original pleading, there is no indication that Fulk "knew or should have known" that this action would have been brought against her and any such knowledge should not be imputed to her.

Finally, the Court considers Harrington's argument that the doctrine of equitable tolling should save his claim. Equitable tolling permits a plaintiff to avoid the bar of the statute of

limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Harrington asserts that he exercised reasonable due diligence in pursing his claim against Fulk, but merely failed to properly identify her in his grievance and Court of Claims complaint, which was filed prior to this action. Harrington has not demonstrated that he exercised due diligence to accurately identify Defendant Fulk. Indeed, Harrington has failed to identify what efforts he made to identify her and how such efforts were hampered or unavailable to him prior to the expiration of the statute of limitations. For these reasons, the Court finds Harrington's claim of deliberate indifference against Defendant Jacy Fulk is time-barred and must be dismissed.

## Conclusion

For the foregoing reasons, the Motions for Summary Judgment filed by Dr. John Sones (Doc. 58) and Jacy Fulk (Doc. 74) are **GRANTED**. This case is **DISMISSED WITH PREJUDICE** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: February 21, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**